**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JOSHUA GIBSON** **PLAINTIFF**

**V.** **CASE NO. 5:26-CV-05004**

**COMMISSIONER,**
**Social Security Administration** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Report and Recommendation ("R&R") (Doc. 12) of the Honorable Spencer Singleton, United States Magistrate Judge for the Western District of Arkansas, regarding Plaintiff Joshua Gibson's request for judicial review of the decision to deny his claim for disability insurance benefits and supplemental security income under the provisions of Titles II and XVI of the Social Security Act.

The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") finding that Mr. Gibson can perform light work with restrictions and is not entitled to benefits. Mr. Gibson filed three Objections to the R&R (Doc. 13). For the reasons explained below, the Court **OVERRULES** the Objections and **ADOPTS** the R&R **IN ITS ENTIRETY**.

## I. BACKGROUND

Mr. Gibson filed for social security benefits on March 7, 2023. (Doc. 12, p. 1). He alleges that beginning June 2, 2021, he has suffered from "anxiety, depression, ankylosing spondylitis, kyphoscoliosis of spine, ADHD, and fibromyalgia." *Id*. The Commissioner denied Mr. Gibson's application for benefits, so Mr. Gibson requested an administrative hearing which was conducted on October 9, 2024. *Id*. at 1–2. The ALJ concluded Mr. Gibson was not disabled and did not qualify for benefits. *Id*. Mr. Gibson

appealed the ALJ's decision, and this Court referred the matter to Magistrate Judge Singleton.

## II. LEGAL STANDARD

The Court reviews this case *de novo* to "ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016); *see* 42 U.S.C. § 405(g). Substantial evidence is a less onerous burden than preponderance of the evidence and exists when a reasonable mind would accept the evidence as "adequate to support a conclusion." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). To determine whether there is substantial evidence to support the ALJ's findings, the Court "must consider evidence in the record that fairly detracts from, as well as supports" the ALJ's decision. *Id*. If the Court determines that the ALJ's decision is supported by substantial evidence on the record as a whole, then it must affirm. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009)). The Court may not reverse simply because substantial evidence exists in the record that could have supported a contrary outcome, or because the Court could have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

## III. OBJECTIONS

To make his decision, the ALJ applies a "five-step sequential evaluation" process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant

from doing past relevant work; and (5) whether the claimant is able, notwithstanding his disabilities, to perform other work in the national economy given his age, education, and experience. 20 C.F.R. § 404.1520(a)(4). Between Steps Three and Four, the ALJ calculates a claimant's residual functional capacity ("RFC") which is "the most [a social security claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Mr. Gibson contends the ALJ erred at Step Three, when formulating Mr. Gibson's RFC, and at Step Five. (Doc. 13, pp. 1, 4, 10). The Court addresses each objection in turn.

**A. Step-Three Determination**

Mr. Gibson bore the burden at Step Three of proving he meets or equals a listing's requirements. *See Cronin v. Saul*, 945 F.3d 1062, 1067 (8th Cir. 2019) (explaining the claimant bears the burden of proving medical equivalence). The ALJ concluded he did not meet his burden because "the evidence fails to demonstrate the requisite inflammation, deformity, ankylosing spondylitis, spondyloarthropathy, or marked limitations in activities of daily living, social functioning, or ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace." (Doc. 7, p. 24).

Mr. Gibson claims the ALJ's failure to identify any subpart, criteria, or listing element regarding Listings 14.09C (ankylosing spondylitis) and 14.09D (repeated manifestations of inflammatory arthritis) prevents judicial review of the ALJ's determination. (Doc. 9, p. 3). However, "[a]n ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017).

Here, the record supports the ALJ's conclusion that Mr. Gibson's impairments do not meet or equal the requirements of Listings 14.09C. Listing 14.09C requires:

> 1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or
> 2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

20 C.F.R. Part 404, subpart P, app. 1, § 14.09C. As Mr. Gibson appears to concede, there is no evidence that his documented degree of fixation satisfies Listing 14.09C's required angle measurements. *See* Doc. 13, p. 2 ("The brief did not ask this Court to convert those findings into the angular measurement required to meet Listing 14.09C."). And he has not explained how he could meet or equal Listing 14.09C without the angle measurements.

Mr. Gibson also has not satisfied his burden regarding Listing 14.09D. Listing 14.09D requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3.Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, subpart P, app. 1, § 14.09D. As the R&R outlined, "[t]he ALJ discussed several activities Plaintiff could perform including traveling, playing board games, and auditioning for voice over jobs." (Doc. 12, p. 6). Such activities are

inconsistent with the required limitations in activities of daily living, maintaining social functioning, and completing tasks in a timely manner.

The Court acknowledges the ALJ's discussion of Listing 14.09 is brief, but the Court disagrees with Mr. Gibson's claim that the ALJ did not fully evaluate Mr. Gibson's evidence, including spinal imaging. As Mr. Gibson pointed out, a later portion of the ALJ's decision indicates the ALJ did review the imaging. *Id*. And this later review is sufficient to support the ALJ's conclusion at Step Three. *See* SSR 17-2p, 2017 WL 3928306, at *4 ("An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.").

Lastly, Mr. Gibson tries to frame the ALJ's Step Three determination as inconsistent with his Step Two decision because the ALJ found that Mr. Gibson's ankylosing spondylitis is a severe impairment, but the diagnosis did not meet or medically equal the severity of the listed impairment in 14.09C. As the R&R concluded, this is not a legitimate objection. (Doc. 12, p. 6). An ALJ's finding that an impairment is severe at Step Two does not guarantee the severity meets or medically equals the Listing requirements. This is because the ALJ's analysis at Steps Two and Three differ. *See* 20 C.F.R. § 404.1520(a)(4). The Court agrees with Magistrate Judge Singleton. There is substantial evidence to support the ALJ's Step Three determination. Accordingly, the Court **OVERRULES** Mr. Gibson's objection.

**B. Conflict Between RFC and Cashier II Reasoning Level**

The ALJ determined Mr. Gibson "has the residual functional capacity to perform

light work. . . . He can understand, remember, and carry out simple instructions." (Doc. 7, p. 27). During the hearing, the ALJ asked the VE a hypothetical question to determine whether jobs exist for an individual with the claimant's same restrictions. She identified three jobs: Cashier II, merchandise marker, and routing clerk. (Doc. 7, p. 64). The Cashier II position requires a reasoning level 3, which Mr. Gibson argues conflicts with the ALJ's RFC limitation to simple instructions. Mr. Gibson claims that the ALJ erred by not resolving this conflict.

However, as the R&R concluded, this error is harmless because there are two other identified jobs that satisfy Mr. Gibson's RFC. (Doc. 12, p. 11); *see Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) ("[O]ne mistaken recommendation does not devalue the rest of [the VE's] opinion."). Mr. Gibson suggests the failure to resolve the conflict is not harmless because the "ALJ made no finding that any subset of those occupations standing alone, existed in significant numbers." (Doc. 13, p. 5). The Court disagrees with Mr. Gibson's characterization of the ALJ's findings. The ALJ explicitly relied on the VE's testimony and explained that nationally there are 301,332 merchandise marker jobs and 40,158 routing clerk jobs. Mr. Gibson's claim does not show the error was not harmless. "To show an error was not harmless, [Mr. Gibson] must provide some indication that the ALJ would have decided differently if the error would not have occurred." *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Here, he has failed to do so. Accordingly, the Court **OVERRULES** Mr. Gibson's objection.

### C. Reliability of VE's Testimony

Lastly, Mr. Gibson claims there is not substantial evidence to support the ALJ's Step Five determination, which concluded jobs exist nationally in significant numbers that

Mr. Gibson can perform. At Step Five, the Commissioner bears the burden of proving the existence of jobs the claimant can perform. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). Whether a VE's testimony is substantial evidence requires a "case-by-case" determination that "takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019).

Here, the ALJ based his determination on the VE's testimony regarding the job-number estimates. (Doc. 7, p. 37). At the hearing, the VE testified there were three jobs which met the necessary restrictions for Mr. Gibson, and these numbers came from Job Browser Pro's SKILLTran. *Id.* at 64, 66. Mr. Gibson attacked the reliability of the VE's job-number statistics in his post-hearing brief by providing job-number estimates that differed from the VE's estimates despite allegedly coming from the same source. (Doc. 7-1, p. 2). Mr. Gibson claims this variation demonstrates the ALJ's conclusion is not supported by substantial evidence. Mr. Gibson also offered a statistician's opinion, which argued the methodology underlying the Job Browser Pro's estimates is invalid. *Id.* at 3.

Despite claiming the methodology is unreliable, Mr. Gibson has cited no Eighth Circuit authority for this proposition. And the Court has been unable to find such a rule. Instead, courts consistently conclude that the program is reliable. *See Jennifer W. v. Bisignano*, 2025 WL 3186944, at *8 n.6 (D. Minn. Nov. 14, 2025) (citing *Chavez v. O'Malley*, 96 F.4th 1016, 1023 (7th Cir. 2024) (concluding Job Browser Pro SkillTRAN is reliable)); *see White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022) (explaining VEs often use Job Browser Pro).

The ALJ justified his conclusion that the numbers were reliable, in part, because it

was unclear whether Mr. Gibson obtained his job number estimates from the same version of Job Browser Pro. (Doc. 7, p. 37). Mr. Gibson rejects this reasoning and argues that "[s]peculation about an unidentified version does not establish the source or methodology of the job number statistics on which the step five finding rests." (Doc. 13, p. 8). However, this Court previously disagreed with a similar argument. *See Moore v. Bisignano*, 2026 WL 2110716, at *3 (W.D. Ark. July 22, 2026) (overruling a claimant's objection that a VE's testimony is not substantial evidence if the VE could not answer questions about her methodology underlying the job-number estimates); *see also Biestek*, 587 U.S. at 108 (rejecting a categorical rule barring VE testimony where the expert "refuses a request for underlying data"). Therefore, the Court declines to conclude that the ALJ's speculation about an unidentified version necessarily means the VE's testimony is unreliable.

Moreover, it is not obvious that Mr. Gibson's job-number estimates are probative because the post-hearing brief does not indicate the methodology used to calculate Mr. Gibson's estimates. *See Wischmann v. Kijakazi*, 68 F.4th 498, 507 (9th Cir. 2023) (concluding claimant's job-number estimates were not probative where the claimant did not explain whether an attorney or VE calculated the estimates or whether the methodology was the same as the one used by the testifying VE). "Given that SKILLTran's Job Browser Pro software is meant to assist a VE in performing a complex matching exercise of various sources of information . . . experience in using the program and interpreting the output would ordinarily be necessary to produce probative results." *Id.*

The ALJ concluded that even if Mr. Gibson's proffered numbers were correct, they did not undermine the ALJ's conclusion that the jobs exist in substantial numbers. Mr.

Gibson interprets this as shifting the burden to him. The Court disagrees. Instead of shifting the burden to Mr. Gibson, the ALJ seemed to be suggesting that Mr. Gibson's numbers support the conclusion that there are jobs in significant numbers.[1] *See Hall v. Chater,* 109 F.3d 1255, 1259 (8th Cir. 1997) ("We ultimately leave to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation."); *Watson v. Kijakazi*, 2023 WL 1815670, at *13 (E.D. Mo. Feb. 8, 2023) (concluding 133,343 is a significant number); *cf. Jennifer W.*, 2025 WL 3186944, at *8 (concluding VE's job number estimates were not credible where the plaintiff's estimates differed significantly from the VE's estimates). Because the Court concludes the VE's testimony is reliable, the Court **OVERRULES** this Objection.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Mr. Gibson's Objections are **OVERRULED**. The R&R (Doc. 12) is **ADOPTED IN ITS ENTIRETY**, and the findings of the ALJ are affirmed.

Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this 3rd day of November, 2026.

TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE

[1] This interpretation is reasonable given that the VE's numbers were 884,573 (Cashier II), 458,920 (Merchandise Marker), and 301,332 (Routing Clerk). And Mr. Gibson's numbers were 458,920 (Cashier II), 167,105 (Merchandise Marker), and 122,280 (Routing Clerk).